UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND MONTEZELLO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PESCE, et al.,<br><br>　　　　Defendants. | No. 2:21-cv-00906-DJC-EFB (PC)<br><br>FINDINGS AND RECOMMENDATIONS |

  Plaintiff is a state prisoner proceeding without counsel in an action brought pursuant to 42 U.S.C. § 1983. Plaintiff and defendants have filed cross-motions for summary judgment. ECF Nos. 34, 40. For the reasons that follow, plaintiff's motion must be denied. Defendants' motion must be granted as to plaintiff's intentional infliction of emotional distress and negligent infliction of emotional distress claims against defendant Pesce and otherwise denied.

**I. The Complaint**

  The action proceeds on plaintiff's amended complaint. ECF No. 11. Plaintiff alleges the following: Plaintiff is a target for discrimination, harassment, and abuse from other inmates because of his mental illness. *Id.* at 17-18. On May 18, 2020, inmate Padilla loudly and openly challenged plaintiff to a fight. *Id.* at 7-9. Plaintiff claims that defendant correctional officers Gaetano, Pesce, and Mott, who could all see and hear Padilla's threats, which went on for two minutes, did nothing to protect plaintiff. Instead, Gaetano walked into his office, Pesce ducked at

his podium station, and Mott simply ignored plaintiff from the control booth. *Id*. at 7-9, 12, 16. Inmate Padilla ultimately rushed plaintiff and began punching him. *Id*. at 8-9. Padilla ended up on top of plaintiff on the floor. *Id*. at 9. Officer Mott's response was to discharge a 40 mm foam round, which hit plaintiff on his back. *Id*. at 9, 15-16. Padilla continued to assault plaintiff. *Id*. at 9. Officer Pesce then deployed a pepper grenade, which "suffocated" both plaintiff and Padilla with "toxic pepper powder." *Id*. During the incident, plaintiff had been carrying his CD player, which along with his Roman Catholic faith and church participation, provide him with forms of "distractive therapy." *Id*. at 19. After the incident, plaintiff's CD player was found, broken, in a trashcan located at Pesce's workstation. The trashcan was marked with the words "FUCK THE POPE." *Id*. at 20; *see also id*. at 33. This caused plaintiff severe emotional distress. *Id*.

## II.     Defendants' Evidence

Each defendant has submitted a declaration. Defendant Gaetano avers that he was a correctional officer at MCSP on the day of the incident between plaintiff and Padilla, and his duties included monitoring the dayroom of the facility housing plaintiff. ECF No. 40-3 at 2. "The dayroom is an interior portion of a housing unit, and can get particularly noisy as this is the area where inmates congregate when not out on yard or in their cells. There is lots of talking, playing boardgames or dominos, inmates on the phone, and watching TV, which can echo off the concrete walls and floor in this enclosed space." *Id.*

That evening, while on the ground floor of the dayroom, Gaetano saw Padilla and plaintiff fighting on the facility's upper tier. *Id.* He saw both inmates "striking each other in the face and upper torso with their fists." *Id.* Gaetano ordered the inmates to "get down," but they continued to fight. *Id.*

Gaetano heard a foam round being deployed but could not see where it struck. *Id.* The inmates continued to fight. *Id.* Then Gaetano saw defendant Pesce deploy a pepper spray grenade that detonated between the inmates' feet. *Id.* The inmates separated and assumed a prone position. *Id.*

/////

/////

   Gaetano has no memory of interacting with plaintiff prior to the incident. *Id.* at 3. He did not know plaintiff's mental health status or history. *Id.* He did not know of any history between Padilla and plaintiff, nor did he hear Padilla raise his voice at plaintiff. *Id.* at 3-4. He "did not notice any confrontation between Padilla and Montezello until the physical fight." *Id.* at 4. Once he saw the inmates fighting, he ordered them to get down. *Id.* Gaetano's incident report, composed on the day of the fight, is consistent with his declaration. ECF No. 40-4.

   That day, defendant Pesce avers, he was also a correctional officer assigned to monitor the dayroom. ECF No. 40-5 at 1. That dayroom typically contains about 40 inmates in the evenings. *Id.* at 2. It is "typically noisy with commotion and conversations." *Id.* That evening, Pesce saw Padilla and plaintiff hitting each other on the upper tier. *Id.* He notified "main control" of the fight on his radio and ordered the two inmates to get down. *Id.* The inmates continued to fight. *Id.*

   Pesce heard defendant Mott, the building "Control Officer," also order the inmates several times to get down. *Id.* "His commands were followed by one shot from his state-issued 40 mm projectile launcher." *Id.* Pesce could not see where the round struck, and the inmates continued to fight. *Id.* Pesce deployed the pepper spray grenade, which detonated between the inmates' feet. *Id.* The inmates separated and assumed a prone position. *Id.*

   At the time of the incident, Pesce did not know plaintiff's mental health history or status. *Id.* at 3. He did not know of any history between the inmates or hear Padilla raise his voice to plaintiff. *Id.* He did not notice the altercation until the physical fight. *Id.*

   Pesce was also unaware that plaintiff was a Roman Catholic. *Id.* He does not remember seeing plaintiff's CD player on the day of the incident. *Id.* While he has not seen a trashcan labeled, "Fuck the Pope," he has seen one marked "Fuck the PoPo," referring to a slang term for police. *Id.* It was not his trashcan, nor was it always located in a particular area of the building. *Id.* Rather, inmate porters would rotate the trashcan between the officers' podiums, office, and bathroom. *Id.* Pesce did not break plaintiff's CD player or throw it away. *Id.*

/////

/////

1    Pesce's incident report, dated the day of the incident, is consistent with his declaration.
2    ECF No. 40-6.
3    Mott avers that he was working as the Control Booth Officer in the facility at the time of
4    the incident. ECF No. 40-7 at 1. "The control booth is comprised of windows and has a 180-
5    degree view of the A, B, and C-sections of Building 2 (A-section is to the left, B-section is in the
6    center, and C-section is to the right.)" *Id.* at 1-2. Mott was responsible for monitoring the
7    dayroom and opening and closing cell doors, among other things. *Id.* at 2.
8    That evening, Mott saw Padilla and plaintiff hitting each other in the face and chest with
9    their fists in front of cell 246 in the C-section. *Id.* He used the PA system to order the inmates to
10   get down, but they continued to fight. *Id.* Mott shot a foam round, aiming at plaintiff's lower left
11   thigh, though he did not see where the round struck, and the inmates continued fighting. *Id.*
12   While Mott reloaded the foam round launcher, he heard the pepper spray grenade
13   detonate. *Id.* The inmates separated. *Id.*
14   Mott was not aware of plaintiff's mental health status or history at the time of the incident.
15   *Id.* at 3. He did not know of any history between the inmates or hear Padilla raise his voice to
16   plaintiff. *Id.* He did not notice the altercation until the physical fight, and he did not see plaintiff
17   trying to get his attention before the fight. *Id.*
18   Mott's incident report, dated the day of the incident, is consistent with his declaration.
19   ECF No. 40-8.
20   **III.    Plaintiff's Deposition**
21   Plaintiff provided a vastly different account of what occurred in his deposition. He
22   testified that, on the evening of the incident, the control booth officer opened his cell to release
23   him to get his medication. Pl.'s Dep. at 20:7-21:25. Plaintiff walked down the steps from the
24   second tier, holding his CD player and a bottle of water. *Id.* at 22:8-17. When he reached the
25   dayroom floor, Padilla asked him a question about school. *Id.* at 23:9-14. Plaintiff did not
26   recognize Padilla from school and was taken aback. *Id.* at 23:18-24. Plaintiff's reaction was "a
27   bit offended," which in turn offended Padilla. *Id.* at 23:24-24:3. Padilla accosted plaintiff "in a
28   belligerent manner" about 35 feet from the control booth. *Id.* at 24:4-10, 29:24-30:4. Plaintiff

4

left to get his medication. *Id.* at 24:10-12. He never raised his voice to Padilla. *Id.* at 28:25-29:1. But Padilla did raise his voice to plaintiff. *Id.* at 29:2-3.

When plaintiff arrived at the podium in the facility at which medication was being dispensed, he saw defendant Gaetano enter an office that was "all covered up with paper so he couldn't look out." *Id.* at 32:2-8. Plaintiff took his medicine and walked back toward his cell, still holding his CD player. *Id.* at 33:1-3. Padilla was at the base of the stairs leading to the second tier, grinning at plaintiff. *Id.* at 33:25-34:7. As plaintiff ascended the stairs, he turned to ask Padilla what his problem was. *Id.* at 34:19-25. Padilla "became belligerent" and challenged plaintiff to a fight. *Id.* at 35:2-3. Plaintiff does not remember how loud Padilla's voice was when he made the challenge. *Id.* at 35:19-21.

Plaintiff declined the challenge. *Id.* at 36:7-9. He continued up the stairs as Padilla yelled that he was "a bitch for refusing to fight him." *Id.* at 37:20-22. Plaintiff felt humiliated in front of the 25-30 inmates in the dayroom. *Id.* at 37:23-24, 40:19-22. Plaintiff estimated that Padilla provoked him verbally in this manner for two minutes, although he was not keeping track of time and does not remember the length of time it took for him to reach the area of the top tier near his cell. *Id.* at 38:1-8.

Plaintiff reached his cell, but the control booth officer (Mott) had not opened it. *Id.* at 38:18-20. Plaintiff moved away from his cell to try to get Mott's attention by calling out and waving his arms around. *Id.* at 39:1-3, 42:8-14. He was about 40-45 feet from the control booth. *Id.* at 44:10-14. "There's no way he could have not seen me," but he just stared straight ahead and ignored plaintiff. *Id.* at 42:15-19. Padilla continued to yell, provoke, and loudly challenge plaintiff to a fight from the base of the stairs. *Id.* at 38:18-39:1. Padilla was making a spectacle, his voice louder than any other voice in the dayroom. *Id.* at 41:8-20. Pesce could hear plaintiff calling out to Mott, but he crouched down at his station and did nothing. *Id.* at 46:1-3. Gaetano remained in his office with the windows covered. *Id.* at 46:4-12.

/////
/////
/////

1    Plaintiff became frustrated with Padilla. *Id.* at 48:15-16. He felt stranded by the
2    correctional officers. *Id.* at 45:21-46:3. Plaintiff called Padilla a coward and a bitch. *Id.* at
3    48:16-17. Padilla then rushed up the stairs, called plaintiff a bitch, and swung at him. *Id.* at
4    49:15-21. Plaintiff lost his balance and fell to the floor, prone. *Id.* at 50:23-51:25. Plaintiff
5    covered his face while Padilla tried to punch him. *Id.* at 52:3-22. Padilla was on top of plaintiff
6    and hit plaintiff several times in the back. *Id.* at 55:17-25, 56:1-6. In seconds, plaintiff was hit in
7    the back by the foam round. *Id.* at 54:6-17. Padilla stopped hitting plaintiff when a pepper spray
8    grenade deployed near them. *Id.* at 56:19-21. Padilla got off of plaintiff and both inmates were
9    escorted away. *Id.* at 58:7-60:6.

10   Plaintiff doesn't remember where his CD player was during the altercation, but he no
11   longer had his CD player at the time he was escorted from the incident scene. *Id.* at 61:17-23.
12   When he returned to his building a short time later that evening, he asked for it. *Id.* at 61:24-63:1.
13   His escorting officer went to "a brown trash can that was located at the side of the podium of
14   Pesce's assigned area . . . marked with the words 'F the Pope' in large capital letters." *Id.* at
15   63:7-15. The CD player was destroyed. *Id.* at 63:18-19.

16   Other officers used the same area and trash can. *Id.* at 64:17-20. But plaintiff believes
17   that it was Pesce's obligation to remove the trashcan due to the offensive message and that his
18   failure to do so constituted an endorsement of the message. *Id.* at 64:22-25; 69:6-70:1. Plaintiff
19   did not see who damaged the CD player or placed it in the trash, but only staff were allowed to
20   use the trashcan. *Id.* at 65:23-25, 67:1-3, 68:4-8. He holds Pesce responsible because he was
21   assigned to oversee the top tier and because prison policy mandates that "an officer does not
22   allow inmates near the area of an incident until it is well examined . . . [and] anything that is
23   significant in that incident is . . . taken into evidence by the officer involved." *Id.* at 67:5-17,
24   68:22:69-2.
25   /////
26   /////
27   /////
28   /////

### IV. Plaintiff's Evidence

Plaintiff submits two declarations that are consistent with his deposition testimony. ECF No. 43 at 19-24; ECF No. 45. Plaintiff adds that it took Padilla about five seconds to walk up the stairs and that it was "out of bounds" for Padilla to do so. ECF No. 45 at 2. The declarations also contain various facts concerning other incidents that have occurred since the altercation with Padilla; these facts are not relevant to the instant case. *See infra footnote 1*.

Plaintiff also submits an "Affidavit of Derrick Behrens." ECF No. 43 at 27-34. In the affidavit, purportedly dictated to plaintiff by Behrens, Behrens attests:

> I observed inmate Padilla insulting Montezello by loudly calling him a "bitch" and challenging Montezello to fight him. These insults lasted for approximately 4-5 minutes and were loud enough to be heard across the C-section part of the dayroom. [¶] I observed inmate Padilla rush up the C-section stairs and attack Montezello. [¶] I observed Montezello "curl up" on the ground while Padilla god on top of Montezello and violently punched at him. [¶] I heard 3 or 4 loud firearm blasts coming from control booth officer Mott. [¶] I observed Montezello on the ground (i.e. "curled up") while Padilla kneeled on top of him, punching him, as firearm shots rang out from the A-2 control booth.

*Id.*

### V. The Motions for Summary Judgment

#### A. Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

/////
/////
/////

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On

the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with the motion for summary judgment, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 24-6; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**B.    Analysis**

  i.   *Plaintiff's Motion*[1]

Plaintiff seeks summary adjudication of his claims that defendants violated his Eighth Amendment rights and were negligent by failing to protect him from Padilla. ECF No. 34 at 16-18.

Prison officials are obligated by the Eighth Amendment to take reasonable measures to protect prisoners from violence by other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish an Eighth Amendment failure-to-protect claim, an inmate must present evidence showing that: (1) he was incarcerated under conditions posing a substantial risk of serious harm and (2) the official was deliberately indifferent to his safety. *Id.* "Deliberate indifference" occurs when an official knows of and disregards an excessive risk to an inmate's safety. *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

/////

---

[1] In his motion for summary judgment, plaintiff includes factual allegations that do not pertain to the instant action. ECF No. 34 at 5-7. The court must disregard these allegations, as they do not concern the May 18, 2020 incident, which is the basis of this case. To the extent that plaintiff seeks some form of relief from the court with regard to these allegations, he must pursue such relief in a separate action.

To establish a cause of action for negligence, a plaintiff must produce evidence showing that: (1) the defendant owed a legal duty of care toward the plaintiff; (2) the defendant breached that duty; (3) injury to the plaintiff resulted from the breach; and (4) plaintiff suffered damage. *Leyva v. Garcia*, 20 Cal. App. 5th 1095, 1103 (2018).

Plaintiff argues that the undisputed facts show that defendants "failed to observe when Padilla climbed upstairs, out-of-bounds, to accost plaintiff." Plaintiff also argues that he should be granted summary judgment because defendants wrote in their reports that plaintiff was shot in the thigh when he was actually shot in the back and because defendant Mott shot plaintiff instead of the larger Padilla. Plaintiff also claims that defendants also failed to appropriately house plaintiff in an E.O.P. single-cell building." ECF No. 34 at 16.

As to the latter argument, plaintiff's amended complaint does not proceed on any claim regarding the propriety of his housing assignment at the time of the assault, nor has plaintiff presented any allegations or evidence that would indicate that defendants bore responsibility for his housing.

As to plaintiff's other arguments, any inaccuracy in defendants' post-altercation reports as to the precise location on plaintiff's body that was hit by the foam round has no apparent relevance to plaintiff's claims. Nor is it undisputed that defendant Mott was aware that Padilla was the sole aggressor in the interaction when he shot the foam round. In his declaration in support of defendants' motion for summary judgment, Mott avers: "I did not hear inmate Padilla raise his voice at Montezello and I did not notice any confrontation between Padilla and Montezello until the physical fight." ECF No. 40-7 at 3.

All defendants deny that they were aware of Padilla's verbal escalations prior to his attack on plaintiff. *Id.*; ECF No. 40-5 at 3 (Pesce Decl.); ECF No. 40-3 at 3 (Gaetano Decl.). Plaintiff states that it took Padilla "at least 5 seconds" to come up the stairs to attack plaintiff, but facts concerning the circumstances present at that time in the facility dayroom are disputed to an extent that the court cannot determine that any defendant's failure to act during that brief span, or the minutes preceding it, constituted negligence or deliberate indifference. Each defendant avers that they did not notice a confrontation between Padilla and plaintiff until the physical fight, and

Pesce and Mott describe the dayroom as a place which can get noisy with various social activities between inmates. ECF No. 40-3 at 2, No. 40-5 at 2.

Accordingly, the evidence and argument provided by plaintiff do not demonstrate that undisputed material facts establish negligence or deliberate indifference by any defendant, and summary judgment in his favor must be denied.

    ii. *Defendants' Motion*

Defendants first argue that plaintiff's Eighth Amendment failure-to-protect claim fails because plaintiff has no evidence showing that he was incarcerated under conditions that posed a substantial risk of serious harm to his safety. According to defendants, the evidence shows that the officers were not aware of any fact showing that plaintiff was not safe in the facility. However, the evidence is disputed concerning the conditions in the facility during the approximately two minutes and five seconds before the physical altercation. Plaintiff's evidence – his declarations, his deposition testimony, and the Behrens affidavit – indicates that Padilla's threatening behavior was loud, apparent, and could be heard above the other noise in the dayroom.[2] While defendants' declarations paint a picture of a noisy dayroom in which they responded to an altercation as soon as they could have, plaintiff's evidence suggests that defendants ignored an obvious prelude to a physical attack.

Defendants next argue that no evidence shows that they knew Padilla posed a risk to plaintiff. However, again, plaintiff's evidence indicates that Padilla's loud threats made him an obvious risk. While the defendants' version of the events differ from plaintiff, summary judgment is not the appropriate means for resolving the conflicting testimony. If plaintiff's testimony is credited at trail a reasonable fact finder could find in his favor on the issue. As the material facts are disputed, summary judgment on plaintiff's Eighth Amendment claim is not warranted.

---

[2] Defendants denigrate the Behren's affidavit as "self-serving." While plaintiff has submitted the affidavit in support of his version of events, it is not "self-serving" in the sense employed by courts examining declarations submitted in connection with summary judgment, because it does not serve the interests of the "self" making the declaration (here, declarant Behrens).

Defendants also argue that they should be afforded qualified immunity. To determine whether to do so at the summary judgment stage, the court must consider whether the undisputed facts show that a constitutional violation occurred, and whether the constitutional right at issue was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the undisputed facts show no constitutional violation, or if the right was not clearly established, the court should grant the official qualified immunity. *Id.* In determining whether the right was clearly established, the court must ask (1) whether the law governing the official's conduct was clearly established and (2) whether a reasonable official, in the same position faced by the defendants, would understand that his conduct violated the law. *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Defendants' request for qualified immunity rests on their arguments that the undisputed facts show that no constitutional violation occurred. But the court has found genuine disputes over material issues of fact on that issue and qualified immunity on the grounds asserted here must be denied at this time.

Defendants also seek summary judgment on plaintiff's claim that their failure to intervene to prevent Padilla's attack constituted negligence. According to defendants, "there is no evidence that any defendant was negligent or that their actions caused or contributed to plaintiff's alleged injuries." ECF No. 40-1 at 16. Defendants argue that the evidence shows that they all reacted quickly to stop the physical fight and were unaware of the preceding verbal altercation. But plaintiff's evidence suggests that Padilla's provocations were loud and obvious, and a factfinder could infer from such evidence that defendants heard them and chose not to act or, in the case of defendant Gaetano, went into an office where he could not discharge his responsibility to oversee the dayroom.

Defendants also argue that plaintiff has no evidence of injury. That simply is not the case. It is undisputed that plaintiff was hit with a foam round and sustained multiple strikes from Padilla. And plaintiff's declarations attest to psychological injuries. ECF No. 43 at 24; ECF No. 45 at 5. As the material facts are disputed, summary judgment of plaintiff's negligence claim against defendants for failing to intervene is not warranted.

1    Lastly, defendant Pesce seeks summary adjudication of plaintiff's claims for negligent
2    infliction of emotional distress (NIED) and intentional infliction of emotional distress (IIED). As
3    NIED is simply a form of traditional negligence, the same elements listed above apply to
4    plaintiff's NIED claim against Pesce (i.e., duty, breach, causation, and damages). *Huggins v.*
5    *Longs Drug Stores California, Inc.*, 6 Cal. 4th 124, 129 (1993). To establish a claim of IIED, a
6    plaintiff must show "(1) extreme and outrageous conduct by the defendant with the intention of
7    causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's
8    suffering severe or extreme emotional distress; and (3) actual and proximate causation of the
9    emotional distress by the defendant's outrageous conduct. . . . Conduct to be outrageous must be
10   so extreme as to exceed all bounds of that usually tolerated in a civilized community."
11   *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991) (internal quotation marks omitted).

12   Defendant Pesce argues that there is no evidence that he threw plaintiff's CD player into
13   the trashcan. The court agrees that plaintiff has produced no evidence indicating that Pesce ever
14   touched his CD player, much less broke it and/or threw it in the trashcan. Plaintiff proceeds on a
15   theory that Pesce must bear responsibility for the broken CD player and the trashcan's message
16   (which is disputed as possibly "Fuck the PoPo" rather than "Fuck the Pope") because the trashcan
17   was at Pesce's workstation and he was on duty on the tier on which plaintiff last saw his CD
18   player. This theory cannot overcome Pesce's declaration that he did not break the CD player or
19   throw it in the trash. As there is no evidence that Pesce committed the acts that form the basis of
20   plaintiff's emotional distress claims against him (breaking the CD player and throwing it in the
21   trashcan), and there is evidence that Pesce did not commit those acts, summary adjudication of
22   plaintiff's NIED and IIED claims against Pesce is appropriate.
23   /////
24   /////
25   /////
26   /////
27   /////
28   /////

## VI. Recommendation

In accordance with the above, it is hereby RECOMMENDED that:

1. Plaintiff's December 14, 2022 motion for partial summary judgment (ECF No. 34) be DENIED; and

2. Defendants' March 6, 2023 motion for summary judgment (ECF No. 40) be GRANTED as to plaintiff's claims against defendant Pesce for negligent infliction of emotional distress and intentional infliction of emotional distress and otherwise DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 4, 2023.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

15